## OHLEN v. HAGAR et ux.
### No. 14945.

Court of Civil Appeals of Texas.
Fort Worth.
May 7, 1948.

Rehearing Denied June 11, 1948.

Garland Flowers, Bryan, Stone, Wade & Agerton and G. W. Parker, Jr., all of Fort Worth, for appellant.

Doss Hardin, Joe Spurlock and Paul J. McClung, all of Fort Worth, for appellees.

HALL, Justice.

Appellees, Derwood Eugene Hagar et ux, sued appellant, Alfred C. Ohlen, in a district court of Tarrant County, Texas, for damages for injuries sustained by his wife on the 17th day of March, 1947, as a result of negligence of appellant in forcibly ejecting her from appellant's premises located in the business section of Fort Worth.

The trial was to a jury and from their answers to special issues the court rendered judgment in favor of appellees in the sum of $5,000, plus interest and costs.

Appellant presents this appeal on two points of error, as follows:

1. The findings of the jury that Mary Elizabeth Hagar did not kick out the glass in the door and that her injuries were proximately caused by appellant's negligence and forcible ejection of her from appellant's premises are so contrary to a preponderance of the evidence as to require a new trial.

2. The trial court did not submit the ultimate and controlling issues as to whether the appellant threw Mary Elizabeth Hagar into the glass door.

A jury returned the following findings:

1. That appellant forcibly ejected appellee, Mary Elizabeth Hagar, from his premises on the occasion in question.

2. That appellant was negligent while so doing.

3. That appellee, Mary Elizabeth Hagar, sustained personal injuries as a result of such forcible ejection.

4. That the negligence of appellant was the direct and proximate cause of the injuries sustained by appellee, Mary Elizabeth Hagar.

5. That the sum of $5,000 was reasonable and fair compensation which appellee should recover from appellant for her injuries.

6. That appellee, Mary Elizabeth Hagar, on the occasion in question did not kick out the glass in the door.

In discussing appellant's point No. 1, we have searched the record to ascertain if the evidence of appellee is so contrary to a preponderance of testimony as would require a new trial.

The facts in the case reveal that appellee, Mrs. Hagar, between the hours of 9:00 and 10:00 o'clock p. m. on March 17, 1947, entered Alfred's Cafe and Bar, owned and operated by appellant, at 1002 Main Street, Fort Worth; that she went to back of the place of business and asked a bartender for the privilege of using the ladies'

lounge; that there was a narrow passageway between the tables, the stools and a row of stacked beer cases.

Appellant testified that all of his beer came in that day which was to last him Monday, Tuesday and Wednesday and that it was stacked from near the front door to the kitchen; that he did not see appellee when she came in but that he did see her when she hit the end of the beer cases and stumbled to the back of the bar; that she spoke to the bartender and then started toward the ladies' rest room and that he went back there and told her, "Lady, you are too full to be in here" and she said, "I want to go to the rest room." That he placed his hands on each of her shoulders, she did not order anything to drink, but he proceeded to put her out of the place of business and when they got about half way to the door she dropped her purse; that she was "slinkish, hard to handle and arguing with me;" that he did not stop to help her pick up her purse but kept holding her and she said, "well, I am going now, give me my purse;" that some unknown party picked up her purse and handed it to her and that was when a scuffle started; that he finally got her on the outside and sat her down on the sidewalk; that she got up and kicked the door in and cut her leg.

Appellee, Mrs. Hagar, testified that she was waiting for her husband to return from the Will Rogers Coliseum, where he was going to night school, and take her home. When she went into appellant's place she went to the back end of the building and asked the bartender where the ladies' rest room was; that she had never been in the place of business before; that the bartender pointed out where the ladies' lounge was and she had turned and started to the lounge when appellant came up; that she knew him; that the beer cases were stacked unevenly, they varied and the height of them varied too; that she was not intoxicated on the occasion in question. When appellant came up he said, "You are too drunk to be in here," and she told him that she wanted to use the ladies' lounge and she testified that he did not want her to or would not let her and started pushing her toward the door; that he kept pushing and

shoving her and bodily threw her out; that he shoved her into the door and the door was open and when she hit the door her leg broke the glass of the door and her leg was cut on the same; that she could not stand on it, that she staggered and fell backwards on the sidewalk.

After she was taken to the hospital, Dr. Young J. Mulkey testified substantially as follows: That she had a very deep cut or laceration on her leg which was clear through the skin and through the large muscle in about the middle of the leg and to the tendons and facia and some of the blood vessels; that his surgery consisted of cleaning the area, taking the loose glass out and stitching and tying blood vessels, ligaments, tendons and skin; that it took him about two hours to repair the wound under anesthesia; that such wound caused stiffness in the muscles for some time and it was necessary for her to use crutches for a period of time; that if the patient felt numbness (which she testified she did) that such numbness was caused from nerves having been severed.

One John Dunwoody testified that he was a detective for the City of Fort Worth and had been with the City for thirteen years; that he was such detective on March 17, 1947 and that he saw appellee, Mrs. Hagar, on the emergency operating table at St. Joseph's Hosptial; that he had a conversation with her about 9:20 p. m.; that he had had a great deal of experience with intoxicated people and that from such experience in his opinion Mrs. Hagar was sober; that he talked to appellant about 10:15 or 10:20 on the same night at the City Hall, that appellant tried to explain to him what had happened, which was in substance as follows: That she came into his place of business and he presumed she was too drunk to be served anything and he was trying to put her out and during the scuffle somehow or other the door was kicked open or the glass in it was kicked out and she was hurt; he said he was manhandling her in order to get her out of the place.

Appellant contends that this case should be reversed because the record shows that seven other witnesses, all of whom were

256

patrons of appellant, testified that appellee kicked the door in after she was put on the outside, but they all give different stories as to how it happened; all of them, except one, testified that appellant used force in ousting the appellee.

To quote the variance and inconsistencies of the testimony of the different witnesses is not necesssary but we will merely state that Robert Teague testified that Ohlen did not use force to oust Mrs. Hagar; Raymond Todd testified that appellant led her out by the arm; Noble Spaulding testified that Ohlen put his arm under Mrs. Hagar's arms and forced her out and that she later came back in and that he put her out again; Alton McGuire said appellant put appellee out gently and did not throw her down in a seated position; while appellant testified that he did sit her down on the sidewalk; M. R. Chadwell testified he did not see the altercation but that he heard glass fall and when he looked around appellant was standing at the end of the bar and that he was not at the door holding it as appellant and other witnesses had testified; Dean F. High testified that appellant took hold of the lady by putting his arms around her waist and pushing her toward the door, that appellant talked to her in a loud voice and treated her roughly; he testified that some person picked her purse up and took it to her after she had gotten in the ambulance, while others testified the purse was handed to her immediately when it was dropped.

It is the duty of the Court of Civil Appeals to set aside a judgment if it plainly appears to it that such judgment was against the overwhelming preponderance of the testimony; this rule of law does not authorize the Court of Civil Appeals to destroy a judgment merely because more witnesses testified on one side than on the other. The testimony in the instant case signifies that appellant and his witnesses testified to a different state of facts than testified to by appellee and her witnesses. It is the duty of the jury, after seeing the demeanor of the witnesses and hearing the tesimony as it falls from their lips, to weigh such evidence and to determine the same; if their findings are not clearly against the great weight of the testimony as to show prejudice or manifest injustice, then the jury findings should stand.

There is nothing to indicate that it was necessary to use such force or rough treatment as outlined by appellee in order to remove her from the premises. She testified that she was willing to leave the place if he would allow her to pick up the purse. The jury had a right to believe her; she said she was not intoxicated; there is testimony showing that she did not drink anything in the place of business; she did admit drinking two bottles of beer some time before the occurrence; according to her testimony, there was no just reason shown why she should not have been allowed to use the ladies' lounge unless it was that appellant did not want her using the same, when he testified as follows: "Q. Now you didn't put her out because you were afraid she might get hurt going to the rest room, did you? A. No, I didn't, because I didn't serve her anything. Why should she come in and use my rest room?"

Consumers' Lignite Co. v. Hubner, Tex. Civ.App., 154 S.W. 249, writ dismissed; Koch v. Noster, Tex.Civ.App., 182 S.W. 372; Lockley v. Page, 142 Tex. 594, 180 S.W.2d 616; Henwood v. Neal, Tex.Civ. App., 198 S.W.2d 125.

We overrule appellant's point No. 1.

Appellant objects to the judgment in point No. 2 because the case was not submitted upon the controlling issues and he argues that the ultimate issue was whether or not appellant threw Mary Elizabeth Hagar into the glass door. Appellees sued appellant for the negligent ejection by appellant and while so doing the appellee was injured. The case was submitted to the jury upon this theory. The jury found that appellee did not kick the door in. We think the case was fairly submitted upon the controlling issues raised by the pleadings and the evidence under Rule 279, Texas Rules of Civil Procedure. The question as to whether appellee was thrown against the door is one of the evidentiary issues and constitutes a part of the proof of the controlling issue of

appellant's inflicting an injury upon appellee while forcibly ejecting her. Texas & P. R. Co. v. Smith, Tex.Civ.App., 115 S.W.2d 1238, writ dismissed; Herndon v. Halliburton Oil Well Cementing Co., Tex. Civ.App., 154 S.W.2d 163, error refused.

Finding there was sufficient evidence to sustain the judgment of the trial court, the same is affirmed.