**BREWER v. DALLAS RY. &
TERMINAL CO.**

No. 14462.

Court of Civil Appeals of Texas.
Dallas.

March 7, 1952.

**436**

White & Yarborough and W. E. Johnson, all of Dallas, for appellant.

Burford, Ryburn, Hincks & Ford and Howard Jensen, all of Dallas, for appellee.

BOND, Chief Justice.

The appellant, Dan Brewer, as plaintiff in the court below, instituted this suit in a District Court of Dallas County against the defendant, Dallas Railway & Terminal Company, for damages claimed to have been sustained by him while a passenger on defendant's streetcar, as the result of a collision between the streetcar and an automobile belonging to and operated by a Mr. McGlasson. The collision occurred at the intersection of Hutchins and Fleming Streets in the City of Dallas.

At the time of the collision the plaintiff was a passenger on the streetcar, and as a result thereof he contends that he was thrown from his seat onto the floor, thus sustaining personal injuries; and that the collision was the proximate result of negligence on the part of the defendant's operator in the following particulars: (1) Failure of the operator to keep a proper lookout; (2) failure to have the streetcar under proper control; (3) failure to observe penal ordinance of the City of Dallas making it unlawful to propel, drive, or move any streetcar at a greater speed than 20 miles per hour and at a greater rate of speed than is reasonable under existing circumstances; (4) failure to sound the gong as the streetcar approached the intersec-tion; (5) failure to apply the brakes; (6) failure to yield the right of way to Mr. McGlasson's automobile; (7) in operating the streetcar on the occasion in question at a greater rate of speed than was reasonable and prudent under the surrounding facts and circumstances; and (8) failure to stop the streetcar before striking the automobile.

The trial was to a jury, and on special issues embodying the aforesaid alleged acts of negligence on part of the operator of defendant's streetcar and as a proximate cause of plaintiff's injuries and damage, the verdict materially went against the plaintiff and in favor of the defendant. Upon the verdict the trial court entered judgment that plaintiff take nothing by his suit.

The primary points on which the appellant predicates a reversal of the judgment of the trial court, are: (a) That the negative answers of the jury to the following special issues have no support in evidence and against the evidence: Special issue No. 1, that the plaintiff did not suffer personal injuries while a passenger on the defendant's streetcar; (b) Special issue No. 3, that the failure of the operator of defendant's streetcar to stop in obedience to the stop sign located on the east side of Fleming Street at the time and on the occasion in question (special issue No. 2) was not a proximate cause of plaintiff's injuries; (c) Special issue No. 7, that the operator of the streetcar did not fail to exercise high degree of care; (d) Special issue No. 12, that the operator did not fail to apply the brakes in time to avoid striking the automobile; (e) Special issue No. 17, that the failure of the operator to exercise a high degree of care (special issue No. 16) was not a proximate cause of the injuries plaintiff sustained; (f) Special issue No. 20, that the operator was not operating the streetcar at a rate of speed in excess of twenty miles per hour; (g) Special issue No. 23, that the plaintiff did not sustain injuries reasonably and proximately caused by the collision.

The aforesaid points being based upon the premise that the evidence is insufficient to support the findings of the jury, we group the points.

The evidence is uncontroverted that there was a collision at the street crossing between the streetcar and the automobile on the occasion in question. The plaintiff testified that he sustained injuries to his leg and stomach, and at the scene of the collision he told a Mr. Howard of having pain in his leg and stomach as the result of the collision; and to a certain extent his testimony was corroborated by that of Mr. Howard. The plaintiff and Howard were friends and co-workers at the same business enterprise and were passengers on the streetcar at the time of the collision. They were sitting on opposite seats, each facing the other,—plaintiff immediately behind the operator of the streetcar, Mr. Howard directly across the aisle on the opposite side. Mr. Howard testified that when the impact or head-on collision occurred he was thrown down into the aisle, hit the side of something on which he was sitting, whirled around and fell over on the plaintiff, knocking him down; he got up and then he helped appellant up. Howard further testified that he and the plaintiff did not continue their journey on the streetcar involved in the collision, got off and got on another car. "He (plaintiff) stopped the motorman and told him that he had to get off so he could vomit." Howard said: "He complained about his leg and stomach hurting him." It is evident, we think, that Howard did not observe any injuries which the plaintiff claimed to have suffered and he did not see him vomit. Howard was not injured and there is no evidence in the record that anyone else on the streetcar was injured or complained of injury by reason of the collision, or that any other passenger was inconvenienced in any way by the collision. Neither the plaintiff nor Howard made any complaint to the streetcar operator of having fallen or suffered injury. The streetcar motorman testified that he did not observe the two men falling immediately behind him, and had no knowledge of such circumstances as testified to by the plaintiff and Howard.

The plaintiff further relies, in support of his points, on the testimony of Dr. M. D. Fry as corroborative of plaintiff's testimony of injury. It will be seen from Dr. Fry's testimony that he merely saw the plaintiff in November, 1948 and again in February, 1951; Mr. Brewer being a patient of his; he complained of pain and soreness in his left knee and over his left kidney. Upon examination, the doctor testified that he found some visible evidence of injury to his left knee,—skinned on the outside and soreness to pressure in that region; and some swelling sufficient to "pouch out" and look rounded. It is undisputed that Mr. Brewer, prior to his alleged injury, and since, was suffering with varicose veins in his legs, as to which condition Dr. Fry said he did not know why the varicose veins had gotten worse, which they had.

As to the alleged injury to plaintiff's side, the plaintiff testified that he had a kidney operation in 1946, left kidney removed, and had no trouble with his side thereafter. Before the accident in question his side was smooth, no bulge. At that time he testified that he was working for Cabell's Milk Company, and during the winter he slipped on some oil and fell, striking his side on some gallon milk jars, resulting in injury to his kidney which was subsequently removed. He further testified:

"Q. Had you had any trouble with your kidney before that? A. No, sir.

"Q. Isn't it a fact, Mr. Brewer, that you had been troubled with kidney stones for a long time? A. No, sir, only just one stone.

"Q. Well, that was before this Cabel injury, wasn't it? A. Yes, sir.

"Q. And you had gone to see doctors about that, hadn't you? A. Yes, sir.

"Q. You had been operated on at the time you had the Cabell accident? A. Yes, sir.

"Q. Did you have another operation after that? A. No, sir. Oh, the one I had my kidney cut out?

"Q. Yes? A. Yes, sir.

"Q. You had had an operation, then, before you got hurt at Cabell's? A. Yes, sir. That was in 1937.

"Q. Sir? A. That was in '37, I had the kidney operation.

"Q. What was that for? A. Kidney stone.

"Q. Was that the same kidney you later had removed? A. Yes, sir.

"Q. That is the same place that you now have a disability? A. Yes, sir."

As a result of the Cabell accident, plaintiff further testified that he employed attorneys to bring suit for his claim of injury against Cabell's insurance carrier, but the claim was settled before trial. The plaintiff further testified that some years before the accident in question he sustained another injury, a broken back, while working in East Texas; that he filed a lawsuit because of it, claimed that he was totally and permanently disabled. As to those suits and the present suit, plaintiff testified that before he ever went to a doctor in reference to either of the injuries, he reported the accident to his lawyer and his lawyer sent him to the same doctor.

The defendant offered Dr. R. E. Van Duzen as a witness. He testified that he had examined the plaintiff on May 31, 1946, before he had his kidney removed, and his examination revealed a scar on the left kidney with a separation or hernia which bulged out when the patient coughed; also found a large stone in the left kidney and a somewhat larger one in the right kidney. Dr. Van Duzen further testified that neither of the kidneys had been removed at the time he examined the plaintiff, and that he found a rupture or hernia involving a considerable separation of the fascia,— the gristle or strong part of the abdominal wall, such separation being difficult to repair; that plaintiff had poor muscle tone, muscles not well developed, thin and flabby. It will be seen that the same condition was present when Dr. Fry examined the plaintiff, a swelling out in the region of the scar.

 The evidence as above related gave the jury a wide discretion in determining the issues of damage and causal connection; in consequence this Court has not the power or insight to speculate upon the processes by which the jury arrived at its verdict. The burden of proof was upon the plaintiff, not only to prove the existence of justiciable facts in support of his cause of action, but must do so by the preponderance of the evidence; that is, the greater weight and degree of evidence. It is within the province of the jury to give weight and credibility to testimony; thus the jury, having witnesses before them, may attach a great deal more, or less, importance to evidence than would a person who merely reads it reduced to narrative form. The jury may well have taken into consideration, in arriving at the conclusion that the plaintiff did not suffer any personal injuries from the collision, and that whatever injuries he had as disclosed by himself and Dr. Fry were not reasonably and proximately caused by the collision; and, too, on the admitted facts that the plaintiff had had two suits theretofore for personal injuries and on each occasion reported the accidents to his lawyer before going to a doctor for a determination of the extent or seriousness of his injury and treatment, if any, therefor; also the fact that he made no complaint to the operator of the streetcar and that the operator knew nothing of his falling; and the further significant fact that no other person in the streetcar at the time of the collision suffered any ill effects,—even his co-worker Howard suffered none. The plaintiff and Howard testified that they were thrown into the aisle of the streetcar; and no other person in the streetcar, other than the two, testified that they saw any such occurrence as related by plaintiff and Mr. Howard. With all these facts before the jury, we cannot say that the jury, in passing on the issues of causation and proximate cause, was beyond the detection of the jury in determining the issues. We cannot say that the full scope of the record dispels trust in the findings of the jury. It must be held that some distrust in the testimony of the plaintiff prompted the verdict.

 Even if it could be said that the evidence was insufficient to support the jury's answers to special issues No. 1 and No. 23, supra, making inquiry as to plaintiff's injuries and damages, the case must be affirmed because of the jury's failure to find that any negligence on part of defendant's

operator was the proximate cause of plaintiff's injuries. The mere fact that the jury's answer, "No," to the damage issue was not supported by testimony, if true, would not justify a reversal of the judgment of the trial court.

The streetcar in question was operated by Charles Wyche who testified that he came to work shortly before the collision, made one trip to the end of the line and was enroute toward town when the collision occurred. He stopped his car some distance back from the intersection of the streets where the collision occurred and as he approached the crossing he observed a passenger waiting at the passenger stop to board his car. He intended to stop for the passenger, he did apply his brakes to stop. The rails were wet and muddy and as he applied the brakes his wheels locked and the streetcar started sliding on the track and continued to slide on past the point where he intended to stop to take on the passenger. When the car started sliding he stepped on his bell and applied sand to the tracks to break the slide. He testified that he saw the automobile some fifteen or twenty feet away on Fleming Street at the time the streetcar began sliding and that the car continued to slide, he sounding his bell until the collision occurred. That this was the first time he had any trouble with his car sliding on the rails and that he had no reason to believe his car was going to slide when it did. In answer to cross examination: ."Q. All right, in other words, you knew it was your fault, didn't you?" The witness answered "Yes." Such answer evidences merely a conclusion of the witness based on the above related facts and certainly could not imply that he was negligent, proximately causing the collision, and the jury may well have so concluded.

 Generally the question whether negligence proximately caused an injury is a question of fact for the jury. It is equally applicable to a case where the negligence consists of the violation of a statute or ordinance as in an ordinary negligence case. Waterman Lumber Co. v. Beatty, 110 Tex. 225, 218 S.W. 363; Seinsheimer v. Burkhart, 132 Tex. 336, 122 S.W.2d 1063;

Abercrombie Co. v. Delcomyn, 134 Tex. 490, 135 S.W.2d 978; Alpine Telephone Corp. v. McCall, 143 Tex. 335, 184 S.W.2d 830; City of Fort Worth v. Lee, 143 Tex. 551, 186 S.W.2d 954, 159 A.L.R. 125; East Texas Motor Freight Lines v. Loftis, 148 Tex. 242, 223 S.W.2d 613. In the case here the failure of the operator to stop the streetcar at the "Stop Sign", we think it is clear that such failure was unintentional. It is shown that he did everything humanly possible to make the stop and failed. Certainly the jury may have and possibly did believe that the failure to stop the streetcar was unavoidable and unintentional. Tarry Warehouse & Storage Co. v. DuVall, 131 Tex. 466, 115 S.W.2d 401; Le Master v. Fort Worth Transit Co., 138 Tex. 512, 160 S.W.2d 224; Hicks v. Morgan, Tex.Civ.App., 259 S.W. 263; Taber v. Smith, Tex.Civ.App., 26 S.W.2d 722; Gulf States Utilities v. Selman, Tex.Civ. App., 137 S.W.2d 122, 124. It would reasonably seem that the findings of the jury on proper control of the streetcar as proximate cause from the evidence required the answers which the jury made.

 We now turn to appellant's procedural points of error: (1) Error in permitting the defendant to elicit from plaintiff the fact that he had been married three times; (2) in refusing to permit plaintiff to introduce sheriff's return on subpoena issued for the police officer J. B. Harris, who was one of the officers investigating, and who was called to the scene of the collision; (3) error in argument of appellee's attorney, viz.: "And the first thing that we knew that he was claiming that he got hurt was when the lawsuit was filed"; and (4) error in appellee's attorney's argument, viz.: "Now, did he know a doctor to see? Why, all his life, men, Mr. Brewer had seen doctors. He had seen specialists for the very thing that he now claims is wrong with him. Dr. Van Duzen, one of the finest doctors in this part of the country and a specialist for that type of condition to his side, to his leg, had examined him * * *."

. These assignments of error were presented to the court below and after due consideration, over defendant's objections,

440

the trial court overruled each one of them. We have carefully and thoughtfully considered each of the points, and while the matters therein complained of may well have been eliminated as having no bearing on the issues involved, yet we fail to find reversible error. Accordingly they are each overruled.

In the light of this record, appellant's points of error are overruled and the judgment of the trial court affirmed.