**TRADERS & GENERAL INSURANCE COMPANY, Appellant,**

**v.**

**Elmer C. HANEY, Appellee.**

No. 15900.

Court of Civil Appeals of Texas.

Fort Worth.

March 28, 1958.

Rehearing Denied May 16, 1958.

Jones, Parish & Fillmore, and Elmer H. Parish, Wichita Falls, for appellant.

Peery & Wilson, Wichita Falls, for appellee.

BOYD, Justice.

This is a Workmen's Compensation case. Elmer C. Haney recovered judgment for compensation for total and permanent disability, payable in a lump sum, and Traders & General Insurance Company, the insurer, appeals.

By its first point of error appellant complains of the introduction of moving pictures of parties other than appellee working on oil wells, and the court's refusal to strike the evidence "when it developed that Plaintiff was employed to work on water wells and never did the type of work represented by the pictures." The objection was that the evidence was "immaterial and irrelevant, and it would solve no issue in the case. It is moving pictures of another man running tubing and rods in a well, and that was not what he was doing at the time he was hurt."

There is no contention that the pictures portrayed the manner in which appellee was injured. They purported to show the type of work required of a tool dresser on a spudder machine. Appellee testified that at the time of his injuries he was a tool dresser on a water well drilling crew, which crew drilled with a spudder machine; that the work on a water well spudder required the same strength as work on an oil well spudder; that he had done such work on oil wells; that his employment at the time of his injuries required that he "wrench out pipe;" that the pictures showed men "wrenching the pipe out;" and that since his injuries he was unable to do that type of work.

We fail to find any record of appellant's having moved to strike the evidence of the pictures after it developed that they showed work on an oil well and not on a water well. And we think the objection to the evidence was too general. 41-B Tex.Jur., p. 166, sec. 138; Zeek v. Gaddy, Tex.Civ.App., 287 S.W.2d 490. But if the objection were sufficient, and the evidence inadmissible, under Rules 434 and 503, Texas Rules of Civil Procedure, the error would appear to be harmless. The point is overruled.

Appellant's second point is that the court erred in overruling its exceptions to Issues Nos. 9 and 10, which issues were as follows:

No. 9: "Find from a preponderance of the evidence the beginning date of such total disability, if any, previously inquired about."

No. 10: "Do you find from a preponderance of the evidence that such total disability, if any, previously inquired about, has been and will be permanent, or has been or will be temporary?"

The objection was that each issue was "confusing and misleading in that it did not tell the jury what 'such total disability' the court was inquiring about, whether it is the total disability which the left arm at or below the elbow was the producing cause of, or the total disability which the alleged injury to the shoulder was the producing cause of, or the total disability inquired about in Special Issue No. 6."

In answer to the following numbered issues the jury found that: (No. 2) appellee sustained injury to the left forearm below the elbow; (No. 5) such injury extended to and affected the left shoulder, causing disability to the shoulder; (No. 6) he sustained total disability following the injury inquired about in No. 2; (No. 7) the injury to his left forearm was a producing cause of such total disability; (No. 8) the resulting injury to the left shoulder was a producing cause of such total disability; (No. 23) appellee sustained injury to his left shoulder on October 17, 1956; (No. 24) the injury to the left shoulder inquired about in No. 23 was a producing cause of appellee's disability; (No. 27) appellee's disability is not confined solely to the left forearm; and (No. 28) any disability which appellee will suffer in the future will not be confined solely to the left forearm.

In view of the jury findings we are unable to agree with appellant that either Issue No. 9 or No. 10 was confusing or misleading. This point is overruled.

The last three points assign error to the argument of appellee's counsel.

Point three relates to the following argument: "You see, if they will put some doubt in this jury's mind, if they will talk about everything, about the deep nerves and it having to be a motor nerve when it is undisputed by every medical authority which Dr. Pomeroy said he had checked on, but the other doctors said, 'Yes, it is true that it is the sensory nerve that causes this reflex problem.' The sensory nerves control the blood vessels; not the motor nerves. They don't control the blood vessels." The objection was that the argument was outside the record.

Dr. Chapman testified that appellee had a severe laceration of his left arm; that the sensory nerves had been lacerated; that there was shredding of the muscle fascia; and that appellee complained of trouble and inability to move his shoulder.

Dr. Pomeroy testified that appellee had some muscular distrophy in his left arm; that many of the sensory nerves were injured and damaged; that he had reflex trouble, or reflex distrophy, from injury to the nerves in his forearm; he described appellee's condition as "causalgia," which he said is "just a medical term meaning that there is damage to the nerves, with reflex problems involving the arm and shoulder." He further said that appellee's

condition was due to damage to the ulnar and median nerves, which are mixed nerves, having sensory impulses and giving "orders to the muscles"; and that after he made his diagnosis he checked it by reading the medical authorities.

Two other physicians testified. All of the medical witnesses agreed that the motor nerves are generally imbedded more deeply in the arm than the sensory nerves. Some of them thought that the motor nerves were not involved in appellee's injuries, and that the reflex problem in the shoulder could not arise if the motor nerves were not injured. But it seems clear from Dr. Pomeroy's testimony that the condition of appellee's shoulder .was due to injury to mixed nerves, that is, the ulnar and median nerves. While Dr. Pomeroy did not say in so many words that "every medical authority which he checked" said that injury to the sensory nerves could cause the reflex problem, we think that counsel's statement was a legitimate deduction from the evidence, and that Dr. Pomeroy's testimony supported counsel's conclusion that it was not necessary to show injury to a motor nerve in order to account for a condition which appellee claimed that he had. We think this point fails to reflect reversible error.

■ Point four relates to the following argument: "Remember this, Mr. Haney can't come back here. This is his last day in Court. He had but one thing to sell the day he got hurt; not an education, not a gift of speech. He had the ability to do manual labor. When you took that from him you took as much from him as you do from a business man if you burn his store. That is all he has to sell. That is his only commodity. He gets a paltry $5,500.00, but you have to go through a speech here, Mr. Haney, implying that you are a thief, a scoundrel and a faker." The objection was that the argument was an improper criticism of counsel for appellant.

The bill of exception setting out the argument, the objection thereto, and the court's ruling, was qualified by the court to the effect that it was in reply to the argument of appellant's counsel. Appellant's counsel said: "* * * We have Mr. Haney testifying from this witness stand under oath that his shoulder started bothering him. just after he fell and before he ever got to the hospital. Now, you heard that, and you know that that is what he swore to. Then we have him on October 29th making a statement in which he says this: 'On October the 17th I was working on the rig in the Yard. I was helping to repair a spudder when the wrench I was using slipped and I cut my left arm open on a piece of steel beam. The cut was on the inside of my arm and below the elbow. That was the only part of my body that was hurt. I fell all the way to the ground.' Now, that is in direct conflict to his testimony on this witness stand. What else do we have? I took it down when the doctor said so. Doctor Howard Seigler tells you that the plaintiff is not telling you the truth, when he said his shoulder started hurting him at the time he got his injury and before he got to the hospital because the plaintiff told him that the pain started in the shoulder after he left the hospital. That is what he told his own Doctor Seigler. Now, what did he swear to back in May when his deposition was taken? 'Q. Now, when did your shoulder first start bothering you? A. Well, it was bothering me when I got up out of the hospital.' Now, it is a pretty bitter pill to have to swallow to say that all of those stories are true. And yet that is what you are going to have to do if you say that it extended to and affected other parts of the body. * * * Now, what else do we have to take into consideration in this case? Has this man tried to move his arm? Has this man tried to work? No. He just sits down and says, 'I am going to live off of the fat of the land. I am going to get $8000. * * *'"

Appellee testified that when he said in his deposition that " 'The cut was on the inside of my arm and below the elbow. That was the only part of my body that was hurt,' " he meant that was the only part of his body that was cut.

We cannot agree with appellant that the argument of counsel for appellee, as the bill of exception is qualified by the trial court, reflects error.

 The last point says that error is shown by the following argument by appellee's counsel: "They asked Mr. Haney on cross the first day, 'Now, didn't you tell Mr. Fields and Mr. Thomas that you wished you had gone back to work and you wished you never had filed a lawsuit?' The jury gets to wondering if he did. Was there any evidence that he ever did that? Mr. Fields was sitting here in this Court Room conferring with Mr. Parish (counsel for appellant). Is there any evidence that he ever really did say 'I wished I had gone back to work. I was really able to'? The question implies a result and an answer, and it puts that wonderment in your mind; that one thing that will lead to compromise, to argument and confusion." The objection was that the argument was seeking to hold appellant responsible for supposed testimony by an absent witness over which appellant had no control.

The bill of exception setting out the argument, the objection, and the court's ruling, was qualified by the court as follows: "During the trial of this case, Mr. Fields, the Plaintiff's employer, was present in the courtroom together with his wife, and Mrs. Fields testified in this case, being called as a witness by the Defendant, Traders & General Insurance Company. Mr. Fields was not an 'absent' witness, but was present in the courtroom during the trial. The Court further finds that his argument was in reply to or explanation of a question asked the Plaintiff by defense counsel." With this qualification of the bill of exception, to which appellant did not object, the point does not show reversible error. Whitener v. Traders & General Ins. Co., 155 Tex. 461, 289 S.W.2d 233.

All of appellant's points are overruled, and the judgment is affirmed.