**Patricia Matula BECK et al., Appellants,**

v.

**Carlos CRAVEN, Appellee.**

**No. 13976.**

Court of Civil Appeals of Texas.

Houston.

Sept. 27, 1962.

Markwell, Stubbs, Decker & Dalehite, Thomas W. Youngblood, Jr., Galveston, for appellants.

McLeod, Mills, Shirley & Alexander, Robert W. Alexander, Galveston, for appellee.

COLEMAN, Justice.

This is a suit for damages in which a judgment was entered that the plaintiff take nothing. Plaintiff has appealed, contending that the jury's answers to the damage issues were against the great weight

and preponderance of the evidence and that the court's charge was erroneous.

All issues on primary and contributory negligence, sole proximate cause and unavoidable accident were answered favorably to plaintiff. Issues 8, 9, 10, 11 and 12 were answered "none". These Issues read:

8. "What sum of money, if any, if paid now in cash do you find from a preponderance of the evidence will reasonably and fairly compensate the Plaintiff Patricia Matula Beck for such physical pain, if any, and mental anguish, if any, as you find from a preponderance of the evidence the said Patricia Matula Beck suffered from the time of the collision to the time of this trial, resulting from her injuries, if any, in the collision in question?

"Let your answer, if any, be in dollars and cents."

9. "What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence will reasonably and fairly compensate the Plaintiff Patricia Matula Beck for such physical pain, if any, and mental anguish, if any, as you find from a preponderance of the evidence the Plaintiff Patricia Matula Beck will, with reasonable probability, suffer in the future, resulting from her injuries, if any, in the collision in question?

"Let your answer, if any, be in dollars and cents."

10. "What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence will reasonably and fairly compensate the Plaintiff Patricia Matula Beck for such diminished capacity, if any, to labor and earn money in the future as you find and believe from a preponderance of the evidence the Plaintiff Patricia Matula Beck will, with reasonable probability, sustain in the future, resulting from her injuries, if any, in the collision in question.

"Let your answer, if any, be in dollars and cents."

11. "What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence will reasonably and fairly compensate the Plaintiff Patricia Matula Beck for such reasonable and necessary medical expenses as she will in reasonable probability incur in the future, if any, resulting from her injuries, if any, in the collision in question?

"Let your answer, if any, be in dollars and cents."

12. "What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence will reasonably and fairly compensate the Plaintiff Alvin Matula for the reasonable and necessary medical expenses, if any, incurred by him to the date of this trial resulting from the injuries, if any, sustained by his daughter, Patricia Matula Beck in the collision in question.

"Let your answer, if any, be in dollars and cents."

The trial court submitted the following special instruction:

"You are further instructed that in answering Special Issue Nos. 8, 9, 10, 11 and 12, you shall not take into consideration any physical pain, past or future, mental anguish, past or future, or diminished capacity to labor or earn money, past or future, caused by any disease, sickness, injury, injuries, bodily infirmities, bodily conditions and/or the natural progression thereof of Plaintiff Patricia Matula Beck which pre-existed or occurred prior to April 5, 1959, or which existed or occurred after April 5, 1959, and in answering these issues you must restrict your consideration to those damages, if any, which are solely the direct and proximate result of the accident of April 5, 1959, made the basis of this suit."

The Plaintiff objected to this instruction on, among others, the following grounds:

"a) First, that this is a comment on the weight of the evidence, in that it tells the jury that the plaintiff did have a disease, sickness, injury, injuries, bodily infirmity, bodily conditions and/or the natural progression thereof either before April 5, 1959 or after April 5, 1959.

"b) Second, that this is an incorrect instruction in that it tells the jury not to consider any physical pain, past or future, mental anguish past or future, or diminished capacity to labor or earn money, past or future, caused by bodily infirmities or bodily conditions which existed after April 5, 1959, and the injuries on which this suit is based are bodily conditions or infirmities which existed after April 5, 1959, and in effect the Court is instructing the jury not to consider the Plaintiff's injuries which existed after April 5, 1959.

\* \* \* \* \* \*

"e) Fifth, the instruction is misleading in that it tells the jury not to consider any physical pain, past or future, mental anguish, past or future, or diminished capacity to labor or earn money, past or future, caused by any bodily infirmity or bodily condition which existed after April 5, 1959, and the Plaintiffs say that the injuries which are the basis of this suit, for which they are suing for damages, are injuries which existed after April 5, 1959, and that they are bodily infirmities and bodily conditions which existed after April 5, 1959, and therefore, in effect, the Court is instructing the jury not to consider the Plaintiff's injuries which existed after April 5, 1959."

These objections were refused and the claimed error was properly preserved in the motion for new trial.

■ We are unable to say that either of the jury's answers to the issues on damages were so contrary to the great weight and preponderance of the evidence as to be clearly wrong. While plaintiff testified that she was injured in the collision made the basis of this suit, and there was no direct testimony that she was not injured, there were circumstances in evidence impeaching her testimony. The automobile in which the plaintiff was riding at the time of the collision was occupied by seven people. None of them, including the plaintiff, complained of injury at the scene. The plaintiff explained this by testifying that she did not realize she was hurt until her neck began to stiffen and she developed a headache about one hour after the collision. Plaintiff testified that she consulted her family physician within a few days about her condition and he prescribed heat packs, but it was later stipulated that the family physician was not consulted, and did not treat her for this condition. Plaintiff testified that she was taking medication prior to the collision which caused her to have severe headaches and that her doctor gave her other medicine for relief of the headache. She said that she continued to use this medicine for relief after the collision. The jury could believe from the evidence that she failed to seek medical attention until she was directed to an orthopedic surgeon by an attorney, and that she was given no treatment other than advice to use heat packs, until after she had been a passenger in two other automobiles which were involved in collisions. She testified that she had been involved in a collision about five years prior to the date of the accident made the basis of this suit, and that since this accident she had been in four more collisions. She said that all of these collisions were minor and that she received no injury in any of them. She testified that after the accident in 1944, her neck did become sore, but that she was in good health on April 5, 1959, the date of the collision forming the basis of this suit. She further testified that she consulted the doctor only six

or seven times from the date of the accident to the date of trial, two years later.

The surgeon who treated plaintiff testified by deposition that she was injured and had permanent disability. It was his opinion, based on plaintiff's statement that she had been involved in a collision on April 5, 1959, that her injuries were probably caused by that collision. When he first saw the plaintiff she had been involved in no other collision except one five years previously. This medical testimony was sharply disputed by competent medical testimony produced by the defendant. This doctor diagnosed a minor strain producing no permanent disability caused by the 1960 accidents, and that if she was injured in 1959 she had recovered because she told him she had no pain for several months prior to the 1960 collisions. In making his diagnosis of strain, he testified, he had to rely on what plaintiff told him since he found no objective symptoms. Considering all of the evidence, we think the jury reasonably could have concluded that the plaintiff received no injury causing pain or disability or requiring medical attention as a result of the collision of April 5, 1959. Arrington v. Paschall, Tex.Civ.App., 352 S.W.2d 866, writ ref., n. r. e.

■ The points complaining of the court's charge present more difficulty. The charge was erroneous in that the court, in instructing the jury not to consider *any* physical pain, mental anguish or diminished capacity to labor or earn money caused by any sickness, injury, bodily infirmities or conditions which *existed* or occurred after April 5, 1959, failed to eliminate a causal connection between such sicknesses, injuries, or bodily conditions and the collision of April 5, 1959. The charge reasonably could have been interpreted to mean that an injury which existed after April 5, 1959, or a bodily infirmity which occurred after that date, could not be considered by the jury in answering the issues even though they believed from the testimony that such injury or bodily condition was caused by

the collision of April 5, 1959. Since the damage issues specifically inquired about physical pain, mental anguish and diminished capacity to labor and earn money, the jury may have wondered why the judge submitted these issues in view of this instruction. They might have reasoned that the court was instructing them to consider only the damage sustained on April 5, 1959, or the jury might have concluded, considering the wording of the special issues in light of the special instruction, that the court was instructing them to answer the issues "none".

■ The instruction which in effect told that jury not to allow compensation for any damage caused by an injury which occurred after April 5, 1959, constitutes a comment on the weight of the evidence. Plaintiff denied that she had received any injury after April 5, 1959. There was no direct evidence that she had received such injury, but there was testimony that she was involved in several collisions and that sometime after these collisions she was advised by her doctor to wear a collar to support her neck and head when she had not been so advised during the previous year.

It will be noticed that the trial court in submitting the damage issues asked, in effect, how much money would compensate the plaintiff for the damage "resulting from her injuries, *if any*, in the collision in question?" While in the special instruction the jury was told, in effect, you shall not take into consideration *any* damage to the plaintiff caused by *any* bodily condition, sickness, injury or injuries which occurred after April 5, 1959.

The word "any" is defined in Black's Law Dictionary (4th Edition) as meaning: "Some; one out of many; an indefinite number * * * It is often synonymous with 'either,' * * * and is given the full force of 'every,' * * *" Webster's Collegiate Dictionary (5th Ed.) defines "any" as: "1. Being one (or, pl., some) indiscriminately of whatever kind; no matter what one; * * * 2. Being one (or, pl.,

some) indiscriminately of whatever quality; not none; no matter how great or small; * * * 3. That is unmeasured or unlimited; * * *" Thus the jury might well have reasoned that the court entertained some doubt as to whether an injury was sustained in the 1959 accident, but had no such doubt but that either injury or sickness of some kind resulted from the accidents in which she was involved in 1960 and 1961.

Both the erroneous instruction and the comment on the weight of the evidence contained in the special instruction quoted were reasonably calculated to cause and probably did cause the rendition of an improper judgment within the meaning of Rule 434, Texas Rules of Civil Procedure.

The judgment of the trial court is reversed and remanded for new trial.