**Frank ROYAL, Appellant,**

**v.**

**James Emett CAMERON, Appellee.**

**No. 70.**

Court of Civil Appeals of Texas.

Tyler.

Sept. 17, 1964.

Rehearing Denied Oct. 8, 1964.

R. E. McDaniel, Winnie, Fairchild & Hunt, Center, for appellant.

Herbert Boyland, Kenley, Ritter & Boyland, Longview, for appellee.

DUNAGAN, Chief Justice.

The judgment heretofore entered on July 23, 1964, is set aside and the original opinion is withdrawn. This opinion is substituted for the original.

This is a common law damage suit growing out of an automobile collision on June 15, 1961, in Gregg County, Texas. Appellant was riding in his own car, which was being driven by Willie Marshall, and the only other occupants in the car at the time of the accident were Willie Marshall's daughter and the Plaintiff's granddaughter.

Appellant instituted this suit against the Defendant in the 124th District Court of Gregg County, for damages to his automobile and for his personal injuries alleged to have resulted from the accident.

The collision in question was between two vehicles moving in the same direction. The car driven by the Appellee hit Appellant's car from the rear. The Appellant's vehicle was not damaged to the extent that it was disabled. There is no evidence the Appellant complained of injury the night of the accident to the investigating officers. The other occupants in the car at the time of the accident were not injured.

The injuries alleged by Appellant were largely established by subjective complaints. He was never hospitalized, save for the purpose of running a myelogram two years after the accident.

Upon the trial of the case, it was stipulated that Appellee was liable for all actual damages incurred by Frank Royal as a result of the collision. The Court did not submit to the jury the amount of property damage since this was undisputed. The Court submitted the usual damage issues in a personal injury suit in three separate issues, to-wit:

Issue No. 1 inquired of the jury what would reasonably compensate Frank Royal for reasonable and necessary hospital expenses, if any, incurred by Frank Royal as a result of the collision in question.

Issue No. 2 inquired of the jury what would reasonably compensate Frank Royal for reasonable and necessary doctor expenses, if any, incurred by him as a result of the collision in question.

Issue No. 3 inquired of the jury what would reasonably compensate Frank Royal for his injuries and actual damages, if any, other than damages to his car, caused by the collision in question.

To each Issue the jury answered "None."

The judgment of the Court awarded to Appellant $300.00 for damages to his automobile on the undisputed evidence, but based upon the findings of the jury to the issues submitted, the Court did not award any damages for his alleged personal injuries. From this judgment the Appellant has duly perfected his appeal to this Court.

The Appellant, by his Points 1 through 9, complains that the Court erred in not granting his motion for a new trial because the jury's answer to each of the issues is contrary to the undisputed evidence, and so against the overwhelming weight and preponderance of the evidence to be manifestly wrong and unjust. The Appellant on trial of this cause, testified that as a result of this collision, he received injuries that caused severe pain to his back and neck and was not able to perform work as he had done prior to the accident. In addition to several lay witnesses, who corroborated Appellant

in respect to his alleged injuries and his inability to perform manual labor, Appellant offered the testimony of Dr. V. M. Holland, who was the family physician and Dr. Heinz K. Faludi, a neurosurgeon from Shreveport, Louisiana, who testified as to Appellant suffering pain in his neck and back and in their opinion it was caused from the accident. However, Dr. Holland testified that Appellant's condition may have resulted from some other cause.

Appellant did not go to a doctor until August 31, 1961, which was approximately 80 days after the accident, and then it was at the suggestion of an attorney for the purpose of an examination and report, and that was to his family physician, Dr. Holland of Carthage.

Dr. Holland did not x-ray the Plaintiff's neck until February 16, 1962, and he then found severe arthritis, from which he said he would never recover and that it would cause limitation of motion of neck indefinitely. He further stated that the limitation of rotation in his neck could likely have been caused by disease as by injury and that he (Appellant) had tenderness of the mid-cervical vertebra, which could be from disease or injury.

Dr. Faludi, who saw the patient for the first time on June 26, 1963, also x-rayed the Plaintiff's neck and found arthritis. He found the bone alignment and intervertebral spaces to be good. He noted the calcifications in the ligamentum nuchae. He found Appellant was suffering with adhesive arachnoiditis. His impression of the Plaintiff's complaint of his neck trouble was slight soreness of left side of neck.

The testimony of Dr. James H. Johnson, in substance, was that in his opinion Appellant's condition was not caused from the accident in question, but it was from an arthritic condition and other conditions to be found in a person the age of the Appellant, who at the time of the accident was between 65 and 70 years of age.

The Plaintiff had shortness of breath, history of prior complaints of back and leg pain, and evidence of arteriosclerosis (arcus senilis). This was shown by the testimony of his own doctors.

Dr. Johnson testified that this osteoarthritis was an aging process and could by itself cause pain and disability. He further stated he did not believe adhesive arachnoiditis, which the Appellant was shown to have, could be caused or aggravated by the collision described by the Appellant. He was of the opinion hardening of the arteries could cause back and leg pain.

■ The x-rays failed to disclose any broken bones or any abnormality, such as displaced vertebra or mal-alignment of the spine. The only thing shown by the x-rays was arthritis, which Dr. Holland referred to as disease, and which he stated would cause permanent trouble in the Appellant's neck. As to the low back condition, Dr. Johnson testified that in his opinion this could not have been caused by the accident, and the jury was entitled to believe him, rather than Dr. Faludi. Dr. Johnson testified in person (Dr. Holland and Dr. Faludi testified by deposition), and the jury had the opportunity to observe his demeanor on the stand. Dr. Faludi admitted the value of his testimony depended on the validity of his opinions. The testimony of a physician is evidentiary and never binding upon the trier of facts. In Reinke v. Thomas, (Tex.Civ. App.) 1963, 369 S.W.2d 692, writ ref., n. r. e., the Court held:

"* * * The jury was in its province in rejecting all or any of the theories of each of the doctors concerning their respective views as to the pain and suffering sustained by appellant on account of his claimed injuries. * * *"

■ The Appellant's case largely rests upon Appellant's complaints of pain and suffering. Matters of pain and suffering are necessarily speculative, and it is peculiarly within the province of the jury to resolve these matters. Harbuck v. Ramos, (Tex.Civ.App.) 1963, 371 S.W.2d 912, no writ history.

In the case of Murray v. Missouri, K. & T. R. Co., (Tex.Civ.App.) 1935, 79 S.W.2d 334, no writ history, the Court said:

"\* \* \* When we consider the other feature, that is, pain and suffering, these are matters which must be left largely to a jury's discretion. They see the witnesses and hear them on the stand. What seems large in black and white may dwindle to insignificance in the larger picture which the jury sees in the trial court."

▇▇▇ There are certain fundamental rules of law which control the Court in deciding if the verdict of the jury is contrary to the overwhelming preponderance of the evidence:

(1) The burden is on the complaining party to show the verdict is contrary to the overwhelming preponderance of the evidence. Foran v. Smith, (Tex.Civ.App.) 1950, 228 S.W.2d 251, no writ history; Wright v. Mack Motor Truck Corp., (Tex.Civ.App.) 1960, 336 S.W.2d 831, no writ history; United States Letter Carriers Mut. Ben. Ass'n v. Sypulski, (Tex. Civ.App.) 1963, 364 S.W.2d 840, no writ history; Marks v. Saul, (Tex. Civ.App.) 1959, 326 S.W.2d 24, writ ref., n. r. e.

(2) It is within the province of the jury to determine the credibility of the witnesses and the weight to be given their testimony. Ohlen v. Hagar, (Tex.Civ.App.) 1948, 212 S.W.2d 253, writ ref., n. r. e.; Heckathorn v. Tate, (Tex.Civ.App.) 1962, 355 S.W. 2d 845, no writ history; Reinke v. Thomas, supra; in the Court's charge in the case at bar, the jury was told they were the exclusive judges of the credibility of the witnesses and the weight to be given their testimony. In this connection, the jury may accept or reject all or part of the testimony of any witnesses and the number of witnesses testifying to a certain fact is not controlling. Ohlen v. Hagar, supra.

(3) It is not enough to show the verdict is merely contrary to the evidence, but the record must clearly show the verdict is so contrary to the overwhelming preponderance of the evidence to indicate it is in fact the product of corruption, passion and prejudice and be so wrong as to be unconscionable. Quinn v. Wilkerson, (Tex.Civ.App.) 1946, 195 S.W.2d 399, no writ history; Advance Loan Service v. Mandik, (Tex.Civ.App.) 1957, 306 S.W.2d 754, no writ history. The Court does not simply place itself in the shoes of the jury and determine if it would have made the same finding. Bardwell v. Anderson, (Tex. Civ.App.) 1959, 325 S.W.2d 929, writ ref., n. r. e.

The jury could take into consideration: Appellant's complaint regarding the permanency of his injuries which were not corroborated by his own medical testimony; no one else was hurt but him; he did not go see a doctor for some two and one-half months after the accident, and then it was because an attorney told him to. Beck v. Craven, (Tex.Civ.App.) 1962, 360 S.W.2d 827, no writ history; Brewer v. Dallas Ry. & Terminal Co., (Tex.Civ.App.) 1952, 247 S.W.2d 435, no writ history.

In the Beck case, the Court said:

"We are unable to say that either of the jury's answers to the issues on damages were so contrary to the great weight and preponderance of the evidence as to be clearly wrong. While Plaintiff testified that she was injured in the collision made the basis of this suit, and there was no direct testimony that she was not injured, there were circumstances in evidence impeaching her testimony. The automobile in which the plaintiff was riding at the time of the collision was occupied by seven people. None of them, including

the plaintiff, complained of injury at the scene. The plaintiff explained this by testifying that she did not realize she was hurt until her neck began to stiffen and she developed a headache about one hour after the collision. * * * The jury could believe from the evidence that she failed to seek medical attention until she was directed to an orthopedic surgeon by an attorney, * * *."

In the Brewer case, the Court said:

" * * * The burden of proof was upon the plaintiff, not only to prove the existence of justiciable facts in support of his cause of action, but must do so by the preponderance of the evidence, that is, the greater weight and degree of evidence. It is within the province of the jury to give weight and credibility to testimony; thus the jury, having witnesses before them, may attach a great deal more, or less, importance to evidence than would a person who merely reads it reduced to narrative form. The jury may well have taken into consideration, in arriving at the conclusion that the plaintiff did not suffer any personal injuries from the collision, and that whatever injuries he had as disclosed by himself and Dr. Fry were not reasonably and proximately caused by the collision; and, to, on the admitted facts that the plaintiff had had two suits theretofore for personal injuries and on each occasion reported the accidents to his lawyer before going to a doctor for a determination of the extent or seriousness of his injury and treatment, if any, therefor; * * *"

■ It is the rule of law equally well settled in Texas that an appellate court cannot substitute its judgment for that of a jury on disputed issues of fact. Disputed issues of fact are always matters or determination by jury, or Trial Court if no jury is taken in the trial. Holmes v. American General Ins. Co., (Tex.Civ.App.) 1953, 263 S.W.2d 615, no writ history, and the au-

thorities therein cited. Heckathorn v. Tate, supra; Roach v. Continental Casualty Company, (Tex.Civ.App.) 1960, 336 S.W.2d 811, no writ history.

In the case at bar, it was the jury's province to disregard the testimony offered by the Plaintiff as to whether he was injured as a result of the accident and to accept the testimony of Dr. Johnson offered by Appellee. It is apparent that the jury did so.

■ Here it became the duty of the jury to pass on the credibility of the witnesses and after having done so, they found Frank Royal did not receive an accidental injury on the date alleged. Roach v. Continental Casualty Company, supra.

By Point 10 Appellant alleges that the Court erred in not granting the Plaintiff a new trial because the verdict of the jury is tainted by, and is the result of, prejudice, bias, passion, corruption or some other improper motive; this complaint of Appellant is not supported by the record and is overruled.

Next, the Appellant contends that the Court erred in not granting him a new trial because the Trial Court had erred in admitting evidence showing Frank Royal, the Appellant, had a health and accident insurance policy from which benefit payments would be applied to his doctor bills while under treatment, or hospital bills if confined to a hospital; and in admitting evidence that the fact that Appellant was receiving a pension from the Veteran's Administration in the sum of $90.00 per month. On direct examination, Appellant in response to questions propounded by his attorney, testified as follows:

"Q. What made you decide to go see a doctor on August 15 or 16?

"A. Why I didn't go to see a doctor up until then, I didn't have any finance to support myself to a doctor.

"* * *

"Q. All right. Now, was it sometime you.think in August before you did get to see a doctor?

"A. Yes, sir, somewhere around the 1st of August.

"Q. You don't know the exact date?

"A. I couldn't definitely.

"Q. Tell this jury why you didn't go to see a doctor before that.

"A. Sir, your Honor, I say to the jury why I didn't go to see a doctor simply was because I was financially disabled, I didn't have the money."

This testimony was offered by Appellant before any evidence had been offered by Appellee.

On cross-examination of Appellant, it was elicited from him that at the time of the accident he had a health and accident insurance policy from which benefit payments would be applied to his doctor bills while under treatment, or hospital bills if confined to a hospital, and that he was receiving a pension from the Veteran's Administration in the sum of $90.00 per month.

On re-direct, the attorney for Appellant fully developed the nature and extent of the insurance policy. Later, the Appellant proved by Billy Langford that Appellant had a health and accident insurance policy with the company he represented that provided a small weekly benefit.

Further, the attorney for Appellant read from Dr. Faludi's deposition a statement that Appellant could not afford medical care and therefore postponed seeing a doctor.

The Courts of this state have uniformly held that when one injects an improper issue into a lawsuit, he cannot be heard to complain when his testimony is rebutted by other improper evidence. National Life & Accident Ins. Co. v. Sanchez, (Tex.Civ. App.) 281 S.W. 891; Schwarte v. Bunting, (Tex.Civ.App.) 210 S.W.2d 655, (writ re-fused, n. r. e.); City State Bank in Wellington v. National Bank of Commerce of Altus, Okl., (Tex.Civ.App.) 261 S.W.2d 749, (writ refused, n. r. e.); Lubbock Bus Company v. Pearson, (Tex.Civ.App.) 277 S.W.2d 186 (writ refused, n. r. e.); Bolstad v. Egleson, (Tex.Civ.App.) 326 S.W.2d 506 (writ refused, n. r. e.). In the case of Lubbock Bus Company v. Pearson, supra, the Court held the Defendant could not complain of evidence concerning issuance of a ticket where it had gone into the matter itself.

The record also reveals there was no objection made to the testimony elicited from the Appellant on cross-examination complained of by Appellant at the time it was offered. Counsel for Appellant only asked that he be given a bill and the Court stated that he may have a full bill.

Even if the testimony complained of was improper, which, under the record we do not think it was, no error was committed by the Trial Court, because counsel for Appellant did not properly object, did not obtain a ruling by the Trial Court at the time it was offered, and did not ask the Court to instruct the jury not to consider the testimony. Texas Employers' Ins. Ass'n v. Haywood, 153 Tex. 242, 266 S.W.2d 856.

The only objection ever made to this testimony by Appellant was in his Motion in Limine to exclude such testimony which was presented to the Court prior to the selection of the jury, on the grounds that said evidence would be prejudicial to the rights of the Appellant and immaterial and irrelevant to any issue in the case. Appellant by his Bill of Exception No. 1 shows that the Court stated "that the matters mentioned in the Motion in Limine would not be allowed in evidence unless said matters became admissible during the trial." We think the objection was insufficient under the facts of this record. It has been held that such objection was too general to require consideration by the Court of Civil Appeals. Peerless Oil & Gas Co. v. Teas, 138 Tex. 301, 158 S.W.2d 758; Zeek v. Gaddy (Tex.Civ.App.) 1956, 287 S.W.2d 490,

writ refused, n. r. e.; Traders & General Insurance Company v. Haney, (Tex.Civ. App.) 1958, 312 S.W.2d 690, writ refused, n. r. e.; City of Denison v. Corcoran, (Tex. Civ.App.) 1952, 253 S.W.2d 321, no writ history; Bridges v. City of Richardson, et al., 163 Tex. 292, 354 S.W.2d 366; Coates v. Moore, (Tex.Civ.App.) 1959, 325 S.W.2d 401, writ refused, n. r. e.

■ Furthermore, the testimony was offered for the limited purpose of impeachment. We think it was admissible for that limited purpose.

■ Although impeaching evidence on collateral matters which affect the credibility of a witness or a party are clearly admissible. The rule of admissibility of evidence of this nature should be liberal and the trial judge should have the discretion to receive any evidence which gives promise of exposing falsehood. McCormick & Ray, "Texas Laws of Evidence," 2d Edition, Sections 684 and 685; Norvell Service Company v. Spell, (Tex.Civ.App.) 1956, 288 S.W.2d 133, writ refused, n. r. e.

In any event, in light of the whole record, we think that such testimony was not reasonably calculated to cause and probably did not cause the rendition of an improper judgment in the case. Rules 434 and 503, Texas Rules of Civil Procedure; Coates v. Moore, supra. Appellant's Points 11 and 12 are overruled.

Appellant next contends the Court erred in not granting the Plaintiff a new trial because the Trial Court had erred in refusing to allow the Plaintiff to prove his good reputation for truth and veracity by witnesses J. B. Hunt and Mundy Hooker. This contention is untenable. The Appellant argues that he was entitled to prove Appellant's good reputation for truth and veracity because the Appellee had placed in issue the truth and veracity of the Appellant when he (Appellee) introduced evidence of the insurance policy held by Appellant, that he was receiving a pension from the Veteran's Administration and the prior diagnosis of arthritis.

■ The mere fact that cross-examination of the Appellant exposed inconsistencies in his testimony given on direct examination is not a sufficient predicate upon which to permit Appellee to offer character witnesses. It seems to be settled in this state that inconsistencies or contradictions in testimony created by cross-examination and by witnesses simply giving different versions of the same transaction are not sufficient predicate to authorize a party to bolster his witness by proof of his good reputation for truth and veracity, or otherwise. Jones-O'Neal Furniture Co. v. Jones, (Tex.Civ.App.) 269 S.W. 180, writ dism., where Plaintiff and others testified she had been bed-ridden and complained of intense pain in her head, neck and back prior to the accident.

The Court said:

"We understand that it is the rule in this state that mere contradiction between witnesses, however sharp the contradiction may be, will not authorize the introduction of evidence showing the good reputation for truth and veracity of witnesses, and this rule applies to parties when they become witnesses."

In support of this rule of law, we cite New Amsterdam Casualty Co. v. Parham, (Tex.Civ.App.) 2 S.W.2d 866, writ dism.; Shell Pipe Line Corporation v. Coston, (Tex.Civ.App.) 35 S.W.2d 1056, no writ history; Jenkins v. Pure Oil Co., (Tex.Civ. App.) 53 S.W.2d 497, no writ history; Fort Worth Hotel Co. v. Waggoman, (Tex.Civ. App.) 126 S.W.2d 578, dism.judgm.corr.; Radford v. Hill, (Tex.Civ.App.) 185 S.W. 2d 129, ref. w. m.; Coleman v. Texas & Pac. Ry. Co., (Tex.Civ.App.) 241 S.W.2d 308, writ ref.; the Coleman case is squarely in point. Finding no error in the Court's action, we overrule Point 13.

Now we come to Appellant's contention by his Points 14, 15, 16 and 17 that the Court

erred in not granting the Plaintiff a new trial because of the alleged improper argument to the jury by the attorney for Appellee. By Appellant's Bills of Exceptions Nos. 3 and 4, in which he alleges improper argument on the part of Appellee's attorney, it is shown that no objection by the Appellant or his attorney was made at the time said argument was made or thereafter, and no request was made of the Court for an instruction to the jury to disregard said matter, nor did Plaintiff move for mistrial. The transcript contained argument of Appellant's attorney in full. We have reviewed the argument complained of and do not believe it was improper, and if it was, it was not objected to. We do not find in the transcript of Appellee's attorney's argument to the jury, the alleged argument set forth in Point 16.

While it is true that in some cases jury argument requires a reversal, even though an objection is not made, the rule applies only when the argument is so vicious and so unwarranted that the minds of the jurors are foreclosed against returning a fair and impartial verdict. We do not find the argument to be such in this case. In this case, the argument was not improper in our opinion, but if it did in any manner exceed the bounds of propriety, which we think it did not, the transgression was slight and could have been cured by an instruction from the Trial Court. At the time the argument was made, counsel for Appellant did not object thereto, or request the Court to instruct the jury not to consider the argument, or move for a mistrial. The Court was not apprised that the argument was objectional to Appellant and gives an opportunity to withdraw same from consideration of the jury.

Appellant's Points 14, 15, 16 and 17 are without merit and are overruled. Transcontinental Bus System, Inc. v. Scirratt, (Tex.Civ.App.) 1964, 376 S.W.2d 56, writ refused, n. r. e.

Furthermore, if the argument was improper, which we do not think it was,

before a judgment is reversed because of argument of counsel, two things must appear: the argument must be improper, and it must be such as to satisfy the reviewing court that it was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment in the case. We do not think the nature of the argument was such as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment. Aultman v. Dallas Railway & Terminal Co., 152 Tex. 509, 260 S.W.2d 596; Goforth v. Alvey, 153 Tex. 449, 271 S.W.2d 404; Texas Sand Company v. Shield, 381 S.W.2d 48, Sup.Ct.

After carefully reviewing the record and all the testimony, we are of the opinion that the answers to the special issues were supported by the evidence; and the jury's verdict is not so contrary to the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust, and that such answers require that judgment be entered that Appellant take nothing.

Judgment of the Trial Court is affirmed.