Alvin H. LANE et al., Appellants,

v.

F. Lutcher BROWN, Appellee.

No. 15384.

Court of Civil Appeals of Texas.

Dallas.

April 11, 1958.

Rehearing Denied May 9, 1958.

---

Leake, Henry, Golden & Burrow and Hartman Hotz, Dallas, for appellants.

Benckenstein, Wells & Duncan, Beaumont, for appellee.

CRAMER, Justice.

■ This is an action for attorney's fees by appellants Alvin H. Lane and Wm. V. Counts, duly licensed attorneys at law of the Dallas Bar, against F. Lutcher Brown, growing out of alleged employment by Brown to represent him and his sister and brother-in-law in a sale of his interest in Krafco Container Corporation, a Delaware corporation hereafter called Krafco, alleging Brown's ownership of one-third

of the stock, his brother-in-law's ownership of one-third and Brown's sister's ownership of one-third of such stock. That appellant Brown was duly authorized to and did employ Lane and Counts as Attorneys. Appellant attorneys sought to recover the reasonable value of their services in representing him in the negotiating and carrying out and concluding of the sale of Brown's stock in such corporation; also alleged an express contract of employment, an implied contract, and, in any event, ratification, approval and acceptance of their services for which they were entitled to recover on quantum meruit.

Brown denied making the contract of employment with Lane and Counts and alleged he did not ratify their employment, but claimed the benefit which he received as a result of their services was attributable to their employment in the sale by the corporation and another stockholder and was only incidental to such other employment.

The trial court after hearing the evidence made findings of fact in substance as follows: (1) Lane and Counts are residents of Dallas County and Brown is a resident of Uruguay; (2) Lane and Counts are licensed attorneys; (3) Alvin Lane represented Krafco from about April 1951 until the sale of the outstanding stock of Krafco to Olin Mathieson Chemical Corporation which was completed in September 1955; (4) the stock of Krafco was owned one-third by Brown, George Scrimshaw and Joan Scrimshaw. Previously Scrimshaw and Brown had been partners in an enterprise known as Krafco Enterprises, Ltd. Lane represented the partnership from April 1951 until July 31, 1952, when it was dissolved because of disagreements between the parties; (5) Krafco was one of the group of corporations called the West Monroe Corporations, the largest of which was Brown Paper Mill Company hereafter called Paper Mill. Paper Mill produced a paper which was in turn made into boxes and other containers by so-called converter corporations of which Krafco was one; (6) Brown was the largest stockholder of the Paper Mill and father of F. Lutcher Brown and Joan Scrimshaw; (7) the stock of all West Monroe Companies was sold to Olin Mathieson Company for $90,000,000, $3,000,000 of which was for the stock of Krafco Container Corporation; (8) on June 15, 1955, Lane went to New York in connection with the proposed sale to the Chemical Corporation of the several companies composing the West Monroe Corporations. Lane was instructed to go to New York by Scrimshaw, President of Krafco, and upon his arrival he was employed by Scrimshaw to handle Krafco's part of the sale; (9) Brown did not at times material to this suit request Lane and Counts to represent him. (10) During the time Lane was in New York from June 15 to July 2, he participated in the preparation of the agreement for the sale to Olin Mathieson. The final draft was completed June 29, 1955 and on or about that date the agreement was executed by Chemical Corporation, Buyer, and Scrimshaw, one of the selling stockholders; (11) during all the negotiations in connection with the preparation of the agreement Brown was in Uruguay and did not know that any one was purporting to represent him in connection with the sale; (12) the final draft of the proposed agreement was taken by H. L. Brown to Uruguay for F. Lutcher Brown and was signed by Brown in Uruguay on July 12, 1955. He had previously received earlier drafts of the agreement. (13) Lane did not communicate with F. Lutcher Brown until he returned to Dallas from New York. His first connection was a letter dated July 8, 1955 and received by Brown between July 14 and 18, several days after the agreement had been signed by him; on August 2, 1955, F. Lutcher Brown through his secretary answered Lane's letter of July 8, 1955, informing him as to the matters to which Lane had referred in said letter "are now being handled by Messrs. Cohen

& Beckenstein"; (14) on July 12, 1955, Lane was in Washington in connection with a tax ruling which was to be secured pursuant to the agreement of sale. On that date Lane was in the company of attorney Cohen who at that time phoned defendant F. Lutcher Brown in Uruguay concerning the tax ruling. Lane did not talk with Brown at this time. After this conversation Cohen advised Lane that F. Lutcher Brown did not desire any tax ruling. Lane did not talk with F. Lutcher Brown at this time. There is nothing in the record to indicate that Brown was ever aware that Lane was present. (15) The first communication from Lane to Brown relative to the matter of employment and compensation was a letter of August 23, 1955. A postscript to this letter indicates the attorneys expected to keep separate the work done for the corporation. (16) The amount of the fee was not discussed until about September 9, 1955, just before the sale was closed in New York. At that time Lane set a fee of $50,000 of which he allocated $20,000 to the corporation and $10,000 to each stockholder in Krafco. Scrimshaw agreed both to the allocation and the fee but did not communicate with either of the other stockholders at that time and Mr. and Mrs. Scrimshaw were divorced. (17) At the time of closing there was an open telephone circuit between New York and Montevideo, Uruguay, so that documents could be executed simultaneously. Attorney Lane, though present, did not talk to F. Lutcher Brown. Instructions to Brown with reference to legal clarification were given over the phone by Benckenstein and there is nothing in the record that would indicate Brown was aware that Lane was present at the closing. (18) A statement for services purportedly rendered was mailed Brown by Lane September 16, 1955; (19) Brown did not pay and suit was filed December 28, 1955; (20) following Lane's return to Dallas July 2, 1955, the major part of his time and that of Counts was devoted to accomplishing matters required by the preliminary and principal agreements; (21) a reasonable fee for services rendered by Lane and Counts is $50,000. There is no evidence as to the value of the legal services rendered to each stockholder. (22) A reasonable fee for the attorneys representing Lane and Counts is $1,500; (23) there is no evidence to establish that George W. Scrimshaw had actual authority to retain Alvin Lane to represent F. Lutcher Brown in the sale of his stock of the corporation. (24) No evidence to establish that the prior conduct of Brown would have led Alvin Lane reasonably to conclude that George Scrimshaw had actual authority to employ Lane to represent Brown in the sale of his stock in the corporation. (25) Scrimshaw had no apparent authority to retain Lane to represent Brown in the sale of his stock in the corporation. (26) There is no evidence to establish that H. L. Brown had actual authority to retain Lane to represent F. Lutcher Brown in the sale of his stock of the corporation. H. L. Brown did not know Lane was contending that he represented F. Lutcher Brown. (27) There is no evidence to establish that the prior conduct of Brown would have led Lane reasonably to conclude that H. L. Brown had authority to employ Lane to represent F. Lutcher Brown in the sale of his stock; and (28) H. L. Brown did not have apparent authority to retain Lane as counsel to represent F. Lutcher Brown in the sale of his stock in the corporation. On such findings the trial court entered judgment for F. Lutcher Brown that Lane et al. take nothing and Lane et al. have duly perfected this appeal from such judgment, here briefing four points of error.

Points 1, 2 and 3 will be considered together. They assert error in rendering judgment for F. Lutcher Brown against Lane and Counts and in not rendering judgment for Lane and Counts since the evidence is uncontroverted (1) that Lane and Counts had an express contract of employment with F. Lutcher Brown for their

services to represent him and his interest in the sale of his stock in Krafco Container Corporation and are entitled to compensation. (2) That there was an implied contract of employment for the legal services of Lane and Counts by F. Lutcher Brown and they are entitled to compensation from him for the reasonable value of their services. (3) That F. Lutcher Brown fully ratified, confirmed and approved the employment of Lane and Counts for the services rendered him and thus became bound to pay them for their services and is estopped from claiming to the contrary.

These points are countered that (1) appellants having failed to adduce sufficient evidence of an express contract of employment between appellant and appellee, the trial court was correct in his holding; (2) there being no evidence of an implied contract of employment between appellants and appellee and the trial court having so found in his findings 23 through 28, such findings are binding on this Court and will not be disturbed; (3) appellants having failed to adduce sufficient evidence to establish as a matter of law, that appellee ratified, confirmed and approved the employment of appellants, the trial court was correct in refusing to so hold.

Appellants and appellee have never personally met each other. There is evidence that appellee is a citizen of the Republic of Uruguay, and appellant Lane, an attorney, and his law firm, Lane, Savage and Counts, represented Krafco Corporation from about 1951 until the sale of the outstanding stock of Krafco to Olin Mathieson Chemical Corporation was completed. Appellee Brown owned a one-third of the Krafco stock and Mr. and Mrs. Scrimshaw each owned one-third of such stock. Scrimshaw and Brown had been partners in Krafco Enterprises, Ltd., and that partnership had been represented by appellant Lane and his law firm from April 1951 until July 31, 1952, when it was dissolved by the partners. During the period of dissolution Lane represented Scrimshaw and

his wife and appellee Brown was represented by other attorneys of his choice. There was also evidence that Krafco, although a separate corporation, was at times in its dealings one of the group of companies at times referred to as the West Monroe Corporations which consisted principally of the Brown Paper Mill Company and several other converter corporations like Krafco. Krafco was located on properties close to and bounded on all sides except for a private drive or road by the Brown Paper Mill Company, a corporation.

Krafco's utilities, railroad service, etc., were owned by Brown Paper Mill and purchased its power from Brown Paper Mill Company but had no special contract or contracts for such paper with such paper mill or elsewhere. H. L. Brown, President and largest stockholder of the Paper Mill, was the father of appellee and Krafco had no contract for paper with the Paper Mill or elsewhere. H. L. Brown entered into negotiations with the Chemical Corporation for the sale of all the West Monroe Corporations. These negotiations resulted in options to Olin Mathieson for the purchase of the West Monroe Corporations which included Krafco with his son's authorization and approval. On about June 14, 1955, H. L. Brown testified George W. Scrimshaw had a sale which would have worked out with Olin Mathieson Chemical Corporation, and for Scrimshaw to notify Lane who was Krafco's lawyer to be present. Lane was notified on June 14, 1955 and immediately flew to New York. After negotiations it was decided the sale by all corporations would be by the stockholders by the sale of their shares of stock. Lane conferred with H. L. Brown and with George W. Scrimshaw many times. There is also evidence he was in connection with Scrimshaw who requested him to represent Krafco and its stockholders as their interests might appear. The terms of the sale were worked out and agreed upon and the amount allocated to Krafco was about $3,000,000. The

agreements for the sale were then put in final form.

F. Lutcher Brown resided in Uruguay and was not present in New York but preliminary drafts of the agreements were forwarded to him by Olin Mathieson Chemical Corporation. He was also in frequent touch with H. L. Brown and Brown's father. Mr. Scrimshaw executed one set of contracts for the sale of all of Krafco's stock and H. L. Brown who was flying to see his son on business took the agreements with him, and after F. Lutcher Brown discussed the sale with his father and read the agreements he executed them July 12, 1955.

Paragraph 14 of the principal agreement, material here, reads: "Each party hereto and Krafco shall pay his or its own expenses incident to the preparation and carrying out of this Agreement, *including all fees of his or its counsel and accountants*, whether or not the transactions contemplated hereby are consummated. The out-of-pocket expenses of Krafco shall not, without the written consent of the Buyer, exceed $25,000." (Emphasis added.)

The agreement also provides that George W. Scrimshaw is the representative of the sellers of the stock who are the stockholders, not the corporation.

 The trial court, in weighing and passing on the testimony of the witnesses, was the sole judge of the credibility of the witnesses. He could believe or disbelieve the evidence of the interested parties to the suit. We can only set aside such findings if there is no evidence to sustain such findings or such findings are so against the great weight of the evidence as to be manifestly unjust. Since the weight of the evidence of interested witnesses and parties to the suit is also for the trier of the facts even though not disputed by other witnesses, the findings by the trier of the facts are binding on us unless we find there is no evidence or that they are against the great weight of the evidence so much so as to be manifestly unjust. Our examina-

tion of the record as a whole leads us to the conclusion that the judge's findings are supported by evidence and that we cannot say they are against the great weight and preponderance of the evidence. Points 1, 2 and 3 are therefore overruled.

Point 4 asserts error in the trial court's failing to render judgment for Lane and Counts against F. Lutcher Brown since they established by overwhelming undisputed evidence not only their right to compensation, but also to recover the reasonable value of the services rendered to him.

Our holdings under points 1, 2 and 3 above settled the question as to appellant's right to attorney's fees and that such fees are not due Lane and Counts from F. Lutcher Brown. Point 4 is overruled.

Finding no reversible error in appellant's points, the trial court's judgment is

Affirmed.