Roosevelt **BENNETT** et al., Appellants,

v.

**A. H. BELTON** et al., Appellees.

No. 16976.

Court of Civil Appeals of Texas.

Fort Worth.

Dec. 13, 1968.

Rehearing Denied Jan. 17, 1969.

W. J. Durham, Dallas, for appellants.

Lattimore & Lattimore, and H. S. Lattimore, Fort Worth, for appellees.

## OPINION

RENFRO, Justice.

Have S. T. Alexander's services as pastor of Mount Zion Baptist Church been terminated?

This is the latest of three law suits in which his tenure as pastor has been the issue.

Suit was brought by Rev. S. T. Alexander, Pastor, joined by trustees, deacons and members of Mount Zion Missionary Baptist Church, against A. H. Belton, trustee and deacon, and other officers and members of the Church, asking for injunctive relief which, if granted, would have the effect of declaring Alexander to have a lifetime contract as Pastor of the Church.

As part of the judgment rendered by the court after a lengthy trial, Alexander's pastorate was declared terminated and he was permanently enjoined from acting as Pastor.

At the request of appellants the court filed extensive findings of fact. According to the court (numbering ours):

(1) Mount Zion Baptist Church is a religious, non-profit Texas corporation.

(2) Its by-laws provide that the Scriptures enclosed in the Bible (King James version) are its only rules of procedure. The Church holds regular business meetings. A Board of Deacons is managing agent of the Church.

(3) *The majority vote of the Church membership is the decision of the Church.* (Emphasis added.)

(4) In 1949 Alexander was selected as Pastor. During a period of strife and litigation in 1960 Alexander was purportedly made Pastor for life at a salary of $110.00 per week but the Church did not intend the vote to have the effect of a new contract—it was merely an effort to settle the strife.

(5) On February 1, 1968, the Board voted to recommend to the next business meeting that Alexander's pastorate be terminated. The following Sunday, at a regular devotional meeting, Alexander, without authority or motion, procured a vote of the members to suspend all business meetings pending a Church audit. Although Alexander declared the proposal carried, in fact the Church members did not so vote, but in fact voted for a business meeting.

(6) At a regular business meeting, correctly and lawfully held, in February, 1968 the lifetime action of 1960 was rescinded, as was the one year notice provision. A "like" valid action was taken at the regular business meeting of the Church in March, 1968.

(7) A moderator, appointed by the court (no objection), conducted a meeting at 7:30 P.M., April 9, 1968. One hundred thirty-four (134) members voted to terminate Alexander's pastorate, and seventy-nine (79) voted for his retention.

(8) Prior to the April 9th meeting, Alexander offered in writing to resign provided the Church pay him three (3) months' salary. Alexander took the vote, did the counting and reported the Church had refused to accept his resignation—in fact the Church did not refuse to accept his resignation. The Church tendered a check for three months' salary, but Alexander refused to accept it.

(9) The members of the Church will not allow Alexander to be Pastor, will not allow him to preach in the pulpit, nor perform any other services as Pastor of Mount Zion Baptist Church.

The court concluded as a matter of law: (1) the Church did not in fact or law give Alexander a life contract; (2) Alexander is no longer Pastor of the Mount Zion Baptist Church; (3) the rescission orders passed by the Church were valid; and (4)

by its vote the Church accepted Alexander's resignation and the Church owes him three (3) months' salary.

In thirteen points of error appellant Alexander attacks all adverse findings of fact for the reason the evidence is insufficient to support them.

The statement of facts, 508 pages, contains the testimony of thirteen witnesses as well as eleven documentary exhibits.

■ In the voluminous record was evidence sufficient to support every material finding made by the trial court.

Much of it was uncontradicted. Some was contradicted. Some was rather confusing and unclear.

■ The court, as trier of the facts, was, of course, the sole judge of the credibility of the witnesses and the weight to be given their testimony.

■ The court was not bound by testimony of any one witness but could accept all, part, or none thereof, or he could accept part of the testimony of one witness and part of another, or draw his own deductions from all the evidence.

■ An appellate court will not disturb the findings of the trial court if there is some evidence of probative value to support same, viewing the evidence in the light most favorable to the successful party and indulging every legitimate conclusion that is favorable to him. Denton v. Bennett, 364 S.W.2d 857 (Tex.Civ.App., 1963, ref., n. r. e.); Varnado v. City of Groves, 329 S.W.2d 100 (Tex.Civ.App., 1959, ref., n. r. e.); Austin Fire Ins. Co. v. Adams-Childers Co., 246 S.W. 365 (Tex.Com.App., 1923).

We hold there was evidence of sufficient probative force to support each and all of the findings of fact. Accordingly, appellants' points attacking the findings of fact are overruled.

In other points of error Alexander attacks the appointment of John Street as moderator of the April 9th meeting, and all actions taken at said meeting, on the grounds that the members and the Pastor did not agree that Street should preside and therefore such meeting was held in violation of the rules, regulations, customs and traditions adopted by the Church.

At the original hearing, after both sides had rested, the following transpired:

"The Court: It is not the purpose of this Court and never has been, to interfere with the internal operation of this Church. * * Now, I think that the thing for them to do, if I were called upon to make a suggestion, would be to have a notice of election posted in their bulletin for a definite date, and a disinterested person there to act as teller. (Amens from the audience.) * * *

"Mr. Durham (attorney for appellants): Your Honor, I agree with the Court, and that is exactly what we ask for. * * *

"The Court: * * * I can't require them to. I do think you ought to have a disinterested person to act as teller of this election.

"Mr. Durham: I don't think my clients would object to that. * * * my clients are not adverse to what the Court is saying. * * * I'll tell the Court the group I represent are willing to get independent and impartial tellers."

A business meeting was held in March, at which Dr. Price, Baptist Minister, not a member of Zion, was asked to preside. The membership present voted to declare the office of pastor vacant. Appellants apparently boycotted this meeting. They claim they had not agreed upon Dr. Price as a moderator. Then followed another lengthy court hearing.

At the conclusion of the hearing the Court, after consultation with the attorneys, announced to those present in the court room that notice would be given in the weekly bulletin on Sundays March 31st and

April 7th that there would be a congregational meeting at 7:30 P.M. on Tuesday, April 9th (regular business meeting date of the Church) to vote on retaining or not retaining Alexander as Pastor.

The name of the Honorable John Street, highly respected and esteemed attorney and Baptist layman, was announced as moderator, along with tellers named by the litigants.

Neither appellants' attorneys nor any member of the Church, litigant or otherwise, objected to the action of the court at that time or at the April 9th meeting.

It was not until sometime after appellants lost the contest that they decided the moderator, a non-member of Zion, should not have presided.

■ Under the circumstances, we think appellants agreed for Street to serve as moderator. They waived, by their actions, words and acquiescence, any objection they might have had to an "outsider" presiding over the meeting. The meeting was conducted with dignity and decorum. Not an objection was made to the moderator or to his manner of conducting the meeting.

We know of no civil statute or Scripture (King James version) which would bar John, the Baptist Street, with consent of the membership, from presiding over a business meeting of Mount Zion Baptist Church.

Furthermore, the procedure followed has sanction in Hopson v. Swansy, 1 S.W.2d 419 (Tex.Civ.App., 1927, no writ hist.).

By way of numerous points of error, appellants contend the civil courts have no jurisdiction to entertain a contest to determine for a church whom it has chosen for pastor, and further, the action of the trial court interfered with the contractual rights of Alexander with the Church.

It is well settled that a majority of the membership present in a Baptist church business meeting, when the meeting is properly conducted, speak for the church. Hughes v, Keeling, 198 S.W.2d 779 (Tex. Civ.App., 1946, no writ hist.).

The meeting of Zion Church on April 9th was properly held. The votes cast were by far the largest number of votes cast in any of the many previous meetings on this matter as shown in the record.

A sizeable majority voted not to retain Alexander.

■ While as a general rule the courts have no jurisdiction to entertain a contest to determine who has been elected pastor, they do have jurisdiction to protect the duly elected pastor in the discharge of the duties of his office, *as long as he is retained in that office by his congregation*. Hopson v. Swansy, supra; 50 Tex.Jur.2d 77, § 18.

■ Alexander was not retained in office by his congregation. He was not entitled to the injunctive relief sought. Alexander invoked jurisdiction of the court to declare himself pastor. His argument that the court did not have jurisdiction to declare his pastorate terminated by official action of the Church is untenable.

The court did not tell the Church whom to select as pastor, nor how to select a pastor, except by majority vote of the membership present in a fair election.

The court did not interfere in the internal affairs of the Church. It merely helped the membership do what some of the members claimed they had been unable to do—vote in a free surrounding.

Final judgment entered by the court forced nothing on the Church or its members, it merely recognized the act of the majority as being a valid act of the Church.

■ The court found that Alexander did not have a lifetime contract. That finding, based upon competent evidence, disposes of Alexander's contention that the court interfered with his constitutional rights. In appellants' pleadings Alexander

asked the court to restrain appellees from: "Breaching and terminating the contract * * * for life," and for certain ancillary relief.· Even if the court erred, and we hold it did not, in finding no lifetime contract, Alexander's remedy, under the circumstances, was for damages for breach of contract. Mayhew v. Vanway, 371 S.W.2d 90 (Tex.Civ.App., 1963, no writ hist.). He did not sue for damages.

The record shows at least ten years of strife· and discord existing within the Church. Disunity reached such height of feeling that some members actually resorted to physical combat within the Church auditorium. The court with unusual patience gave all parties a chance to be heard. He helped, lawfully, the membership to express itself on the vital issue of pastorship and at last brought peace to those troubled people. His action was reasonable, lawful and wise.

All twenty-four points of error have been considered and each and all are overruled.

Affirmed.