V. K. HALL et al., Appellants,

v.

VILLARREAL DEVELOPMENT COR-
PORATION, Appellee.

No. 910.

Court of Civil Appeals of Texas,
Corpus Christi.

Nov. 27, 1974.

Rehearing Denied Dec. 19, 1974.

J. E. Wilkins, Wilkins & Wilkins, Mc-Allen, for appellants.

Henrichson & Henrichson, Edinburg, for appellee.

## OPINION

NYE, Chief Justice.

This is a suit by the contractor, Villarreal Development Corporation, to recover the balance due on a written contract for work done in connection with the construction of a washateria building in the City of McAllen. The owners, V. K. Hall and wife, Betty Barbe Hall, filed a cross action to recover damages for the delay on the part of the contractor in completing the

building. The case was tried to the court without intervention of a jury. Judgment was rendered for the contractor. All relief was denied to the owners on their cross action. The owners have perfected their appeal from the judgment of the trial court.

On June 21, 1973, the contractor entered into a written contract with the owners to construct a concrete block and brick washateria building for the sum of $35,200.00. Contemporaneous with the written contract, the owners executed a promissory note in this amount. The note was payable in installments equal to 90% of all of the labor expended and material installed or delivered to the job site during that installment period. The remaining 10% of the total consideration was to be paid within thirty (30) days after completion, inspection and satisfaction. The building was to be built in accordance with the plans and specifications agreed upon between the parties. However, part of the work was performed pursuant to certain oral agreements entered into as changes in the work specified in the plans and specifications were necessary. The owners ultimately paid the contractor the sum of $31,786.61, leaving a little less than 10% of the contract unpaid.

Later, certain disputes arose between the contractor and owners. The first controversy arose over whether or not there should have been a recirculating pump at the hot water heater and three lines running to the bulkhead where the washing machines were located, or whether the hot water line would run to a recirculating pump on the bulkhead, as was done in this case. The second controversy arose over whether or not there was an agreed change in the original plans and specifications between the parties concerning an overhang thus making it unnecessary to put on certain types of brackets and braces which were originally agreed upon. After completion of the building, the owners took possession on January 5, 1974. Because of the above controversies, the owners withheld the balance due under the contract.

The contractor then brought suit to recover the balance withheld. The owners' cross action against the contractor was predicated on the above controversies and the delay by the contractor in completion of the contract. The trial was before the court without a jury. The trial court entered judgment in favor of the contractor for $3,414.39, and denied any relief to the owners on their cross action. The pertinent findings of fact filed by the trial court were:

(2) I find as a fact that the contractor and PLAINTIFF, VILLARREAL DEVELOPMENT CORPORATION completed the building in accordance with the plans and specifications in a good workmanlike manner, with the exception of the following:

(a) By mutual agreement, the parties agreed to alter the plans with respect to the 10 feet overhang of the building and to substitute steel braces and beams in lieu of the wooden braces or brackets in order to construct a more substantial building. That there was a meeting of the minds on the change and that the alteration was for the benefit of the Defendant without additional cost to him.

(3) I find that there was no meeting of the minds with respect to the construction of the recirculating hot water unit to be placed on the slab under the building; that a recirculating unit was installed and that the only plans and specifications regarding the same, as set out in the contract, was that such plumbing comply with local and State ordinances and that the plumbing was done in accordance with State and local ordinances."

Appellants' first and second points of error are insufficient evidence points and are directed to the controversy concerning re-

circulation of the hot water. The owners argue that the building is not functional as a laundromat without a recirculating hot water system that would provide for hot water instantly and at all times, and the trial court erred in so finding. They further argue in their points of error that the plumber and contractor could have plumbed in the water system so that it would circulate in a complete circle and the customers could get hot water immediately rather than having to wait for as long as one minute; that a failure to do so brought about a failure to produce the building intended by the parties. The appellee contractor answers this contention saying that the plumbing was installed so that it would circulate and it does. The contractor says in effect that if the owners had wanted the specific system that they now argue for, they should have set it out specifically in the contract, plans and specifications. The plumbing was done in accordance with State and local ordinances.

Where a case is tried before the court without a jury, the trial court acts as a trier of facts and stands in the same position as a jury, being the judge of the credibility of witnesses and the weight to be given their testimony. His findings are entitled to the same weight and conclusiveness on appeal as is the verdict of a jury. Where such findings are supported by evidence of probative force, they are binding upon the appellate courts. Carriere v. Bodungen, 500 S.W.2d 692 (Tex.Civ.App.—Corpus Christi 1973, no writ); Lindley v. Lindley, 201 S.W.2d 108 (Tex.Civ.App.—Fort Worth 1947, writ ref'd n. r. e.). We are not authorized to disregard such findings unless we find, as a matter of law, that they are not supported by any evidence or that such findings are so against the great weight and degree of credible testimony as to be manifestly wrong and unjust. As in other cases, fact findings may embody inferences properly deducible from the evidence. We will not disturb the fact findings if there is some evidence of probative force to support them, view-

ing the evidence in the light most favorable to the successful party and indulging every legitimate conclusion that is favorable to him. 4 McDonald, Texas Civil Practice § 16.10 (1971); Hidalgo County v. Pate, 443 S.W.2d 80 (Tex.Civ.App.—Corpus Christi 1969, writ ref'd n. r. e.); Red Arrow Freight Lines, Inc. v. Howe, 480 S.W.2d 281 (Tex.Civ.App.—Corpus Christi 1972, writ ref'd n. r. e.); Mitchell's, Inc. v. Nelms, 454 S.W.2d 809 (Tex. Civ.App.—Dallas 1970, writ ref'd n. r. e.); Denton v. Bennett, 364 S.W.2d 857 (Tex. Civ.App.—Fort Worth 1963, writ ref'd n. r. e.); Bennett v. Belton, 436 S.W.2d 161 (Tex.Civ.App.—Fort Worth 1968, writ ref'd n. r. e., 442 S.W.2d 678).

The record shows that there was no specific agreement between the parties as to what form or style the recirculating hot water system installed should be, only that there should be a recirculating system. The owners were not present when the building was built. The plans and specifications do not elaborate as to a specific type of hot water system. Gilbert Villarreal, the plumber, testified that he did in fact install a recirculating hot water system. He testified that he installed a line from the hot water heater to the first bulkhead where the washers were to be installed. The first bulkhead contained a circulation pump from which a line went to Bulkhead No. 2, then to Bulkhead No. 1. A return line then went back to the hot water heater so it would circulate again. Appellants owners contend that there should have been three separate lines to each bulkhead from the hot water heater. However, the plans and specifications did not specify three separate lines from the hot water heater to be installed as contended. Joe Schindler, a general contractor who had built many similar buildings, testified that the building was complete; that the washateria was in operation; and that it was being used by the owners for the purpose for which it was built. He also testified that the building was constructed in a good and workmanlike manner. We

conclude and so hold that there was sufficient evidence, under the rules we are required to follow, to support the trial court's findings. Appellants' points of error numbers 1 and 2 are overruled.

Appellants next complain in other points of error that the trial court erred in rendering judgment for the contractor, based upon its additional finding of fact, in that there was insufficient evidence to support such finding. The court's finding reads as follows:

"(2) That there is conflicting evidence as to whether or not the original plans called for a six foot overhang to be braced by the wooden brackets and was later changed to a ten foot overhang, but the Court deems this as immaterial as both parties finally agreed to make a ten foot overhang to be supported by the wooden brackets as shown by DEFENDANTS' Exhibit 6."

The question before us was whether or not there was a change in the original plans and specifications agreed upon between the parties so as to provide for a ten (10) foot overhang rather than the six (6) or eight (8) foot overhang with special brackets and braces as originally agreed upon.

Mr. Longoria, who drew the plans and specifications for the contractor, testified that the original plans called for an overhang of seven feet, eight and one-half inches. Later, the owners requested that the overhang be not less than ten (10) feet. This request was made to the contractor and to Longoria. The evidence discloses that Villarreal and Longoria, not being sure that the 4′ X 6′ wood brackets would be sufficiently strong to hold up a ten (10) foot overhang, engaged the services of a professional engineer from Palmer Steel Company. The contractors were advised that the 4′ X 6′ beams would not support the ten (10) foot overhang; that to adequately support it, steel brackets should be substituted for these wooden brackets which the original plans called for. Longoria, in turn, conveyed to the owners the recommendations they had received as to the substitution of the steel for the wood brackets. The owners agreed to this change. There was no evidence of any objection to this substitution of the steel beams for the wooden ones by the owners until after the lawsuit arose. There is other evidence showing that Hall (owner) knew and agreed to the substitution. The evidence showed that he paid for the steel by making a check jointly payable to the contractor and Palmer Steel Company, the supplier of the steel. This substitution of steel beams increased the expense to the contractors by $844.00, none of which was added to the contractual amount originally agreed upon.

From a review of this record then, using the rules laid out previously, we are of the opinion that the evidence amply supports the trial court's findings. Accordingly, the trial court correctly concluded that the parties did agree to the change to make a ten foot overhang of the building and to substitute steel braces and beams in lieu of the wooden braces or brackets in order to construct a more substantial building.

The appellants' last two points of error are that the trial court erred in rendering judgment for the contractor because the contractor neither alleged nor proved the facts necessary to support any judgment and that such judgment is against the great weight and preponderance of the evidence. These points of error are different shades of those already asserted. We have carefully considered all of appellants' points of error and they are overruled.

Judgment of the trial court is affirmed.