G———, Appellant,

v.

G———, Appellee.

No. 20362.

Court of Civil Appeals of Texas, Dallas.

Aug. 12, 1980.

Rehearing Denied Sept. 9, 1980.

Carl M. Weisbrod, Robertson & Wilkinson, Inc., Dallas, for appellant.

Nathan K. Griffin, William J. Neilon, Jr., Law Offices of Marvin Thomas, Dallas, for appellee.

Before GUITTARD, C. J., and AKIN and HUMPHREYS, JJ.

AKIN, Justice.

The sole question on appeal of this paternity case is whether the findings of the trial judge that the illegitimate child born to the appellant–mother was not the natural child of the appellee are against the great weight and preponderance of the evidence. In this respect, the trial judge made two findings: (1) that the child was conceived while the mother was married to a former spouse, and (2) that even if the first finding is wrong, the mother has not established the paternity of the appellee by a preponderance of the evidence. We hold that both findings are against the great weight and preponderance of the evidence. Consequently, we reverse and remand.

Except for the paternity of this child the facts are relatively undisputed. The mother was previously married to another man and was divorced in either July of 1966 or 1967. The exact date is determinative of the trial judge's first finding. Undisputedly, the mother and the appellee began a meretricious relationship shortly after her first divorce and were having sex in October of 1966 when the child in question was conceived. Later, in 1971, the appellant and appellee were married and had another child. When the mother sought a divorce from appellee and support for her two children, this dispute arose. The trial judge granted the divorce and granted support for the younger child but declined to do so with respect to the older child on the ground that the appellee was not his father. This appeal ensued.

With respect to the first finding that the child was conceived during the marriage of the mother to a former spouse, the trial judge apparently presumed that the child was the former spouse's natural child because neither non–access nor impotency had been proved. *See Wedgman v. Wedgman*, 541 S.W.2d 522, 523 (Tex.Civ. App.–Waco 1976, writ dism'd); Tex.Fam. Code Ann. § 12.02 (Vernon Supp. 1980). The mother argues that this finding is contrary to the preponderance of the evidence. We agree. The child was born July. 16, 1967. Undisputedly, the mother married her former spouse in 1965 and four years after the child was born married appellee. Thus, the dispute concerns the date of the mother's divorce from her former spouse. With respect to when she divorced her former spouse, she testified that she filed for divorce and moved from Fort Worth to Dallas in May of 1966. Thereafter, she moved in with her parents and began a meretricious relationship with appellee. With respect to the crucial question of when her divorce from her former spouse became final, she stated:

A. Okay, it was July the 14th. I can remember because it's C.H.G.'s (appellee) birthday.

Q. July 14th of *1967*?

A. Right.

Q. By that time how would you describe it? As of that time, July 14th, 1967, how would you describe your relationship with C.H.G. (appellee)?

A. We were pretty close then.

Q. What do you mean by pretty close?

A. Well, we were dating and we were having sex. [Emphasis added.]

Additionally, she testified that she continued seeing appellee until October of 1967, when appellee moved in with his mother. With respect to this event, she testified further:

Q. Okay, was it *now* October of '67 or October of '66?

A. I mean *'66.* I'm sorry. [Emphasis added.]

She also testified that she continued the meretricious relationship with appellee until June 19, 1967, when he entered military service.

From this testimony it is apparent that the trial judge's finding that the mother was married to her former spouse at the time the child in question was conceived is against the preponderance of the evidence, thus requiring reversal. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951). Obviously, the mother was mistaken when she agreed with her counsel that the date of divorce from her former spouse was July 14, 1967. This is true because if she continued to see appellee after her divorce until June of 1967 when appellee entered military service, the divorce had to be in 1966. Thus, the only logical conclusion from her testimony is that she meant 1966 as the date of divorce from her former spouse. Furthermore, at the hearing on motion for new trial, a certified copy of the divorce decree showing the date of divorce as July 14, 1966, was introduced, thus dispelling any doubt with respect to this date.

■ Likewise, we hold that the judge's finding that even if the child was not conceived during the marriage of the mother and her former spouse, the mother has not shown by a preponderance of the evidence that appellee was the natural father of the child is against the preponderance of the evidence. The mother testified that she was having sexual relations only with appellee at the time the child was conceived and appellee admitted having sexual relations with her at the time. Furthermore, an expert witness testified that blood tests showed a 98.5 percent probability that appellee was the father of the child. No attack was made upon the accuracy of this blood test.

Nevertheless, appellee testified and contends that he believed that the mother was seeing other men while he was having sexual relations with her, but admitted that he did not know this as a fact and that she had denied having relations with another. To support his contention, he points to the fact that the child's birth certificate designates the former spouse as the child's father and that the mother did not change the name on the certificate. He also testified that the child is lighter in color than he and is pigeon–toed, although he is not, and that the mother's sister stated that he might not be the child's father.

The latter testimony is hearsay, and, of course, has no probative value. With respect to the birth certificate, the fact that the child's birth certificate bears the name of the former spouse is not conclusive as to the identity of the child's natural father because the name of the father of an illegitimate child cannot be used in the birth certificate of the child and the certificate had to carry the mother's surname, which was still the same as her former husband. Tex.Rev.Civ.Stat.Ann. art. 4477, rule 47a (Vernon Supp. 1980). As to the color of the child and to the fact that the child was pigeon–toed, although appellee was not, no evidence was introduced concerning the probability of a black child being the same color as his father, or the probability of the child being pigeon–toed when his father is not.

Thus, the record contains no competent evidence supporting the court's finding that appellee was not the father of the child. Appellee's argument that the mother was having sexual relations with other men at

the time the child was conceived is based on sheer speculation. The mother testified unequivocally that appellee was the only man she was having sexual relations with at the time, and, although the trial court might not be required to accept her testimony alone, it is strongly corroborated by the blood test, which establishes a 98.5 percent probability that she was telling the truth. This percentage may not amount to certainty, but contested facts are rarely established to this degree of probability. Consequently, in the exercise of our jurisdiction to review findings of fact, *Hopson v. Gulf Oil Corporation*, 150 Tex. 1, 237 S.W.2d 352, 358 (1951), we hold that the trial court's finding that appellee is not the father of the child is contrary to the overwhelming weight and preponderance of the evidence.

Reversed and remanded.

HUMPHREYS, Justice, dissenting.

The trial judge stated in this decree that the mother did not show by a preponderance of the evidence that the appellee was the natural father of this child. The mother had the burden of proof on all issues and appellee was not obliged to prove anything in this case, as he asserted no defenses. As stated by Justice Norvell in *Dyer v. Sterett*, 248 S.W.2d 234, 239 (Tex.Civ.App.–San Antonio 1952, no writ):

> The fact that an appellate court after a review of the evidence may have reached a different conclusion from that of the jury or the trial judge sitting without a jury is not sufficient basis for setting aside the verdict or finding. *Crawford v. Beaver–Electra–Refining Co.*, Tex.Civ. App., 273 S.W. 892; *Canales v. Clopton*, Tex.Civ.App., 145 S.W.2d 933.

In determining whether appellee was the father of this child, the trial court had to base its findings on the conflicting testimony of interested witnesses. The crucial testimony came from the mother, who testified that she was having sexual relations with appellee and no other man during the time that the child was conceived. It was within the sole province of the trial judge as trier of fact to observe the demeanor of the witnesses, to judge their credibility, and to determine the weight to give to their testimony. *See Hood v. Texas Indemnity Insurance Co.*, 146 Tex. 522, 209 S.W.2d 345, 346 (1948); *Ryan v. Morgan Spear Associates, Inc.*, 546 S.W.2d 678, 684 (Tex.Civ. App.–Corpus Christi 1977, writ ref'd n. r. e.); *Lane v. Brown*, 312 S.W.2d 735, 739 (Tex.Civ.App.–Dallas 1958, writ ref'd n. r. e.). The trial judge was authorized to disbelieve the mother and to determine how much weight to give the blood test evidence in light of its judgment of her credibility. On the other hand, this court is not authorized to pass upon the credibility of witnesses or the weight to be given inconclusive evidence such as this blood test.

The parties elected to try this case to the court in the absence of a jury. When the credibility of the witnesses and the weight to be given to the proof is decisive, such a choice is not without risk because the findings are to be made by only one person. Nevertheless, when the trial court found against the mother, it was in a better position to rule on the evidence than an appellate court. Accordingly, I would affirm.